UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

UNITED STATES OF AMERICA

    -v-

DANIEL BONVENTRE et al.,

    Defendants.

-------------------------------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 0 5 APR 2011
```

No. S2 10 Cr. 228 (LTS)

### AMENDED OPINION AND ORDER[1]

APPEARANCES:

PREET BHARARA
United States Attorney
Southern District of New York
  By: Jesse M. Furman, Esq.
      Lisa A. Baroni, Esq.
      Julian J. Moore, Esq.
      Matthew L. Schwartz, Esq.
One St. Andrew's Plaza
New York, NY 10007

*Attorneys for the Government*

THE LAW OFFICES OF ANDREW J. FRISCH
  By: Andew J. Frisch, Esq.
      Jeremy Sporn, Esq.
950 Third Avenue
New York, NY 10022

*Attorneys for Daniel Bonventre*

SERCARZ & RIOPELLE, L.L.P.
  By: Maurice H. Sercarz, Esq.
      Roland G. Riopelle, Esq.
      Diane Ferrone, Esq.
152 West 57th Street, 24th Floor
New York, NY 10019

*Attorneys for Annette Bongiorno*

DUANE MORRIS, LLP
  By: Eric R. Breslin, Esq.
744 Broad Street, Suite 1200
Newark, NJ 07102

*Attorneys for Joann Crupi*

---

[1]     This Amended Opinion and Order includes revised attorney appearances, but is otherwise identical to the Court's March 30, 2011, Opinion and Order.

Defendants Daniel Bonventre ("Bonventre"), Annette Bongiorno ("Bongiorno") and Joann Crupi ("Crupi" and, together with Bonventre and Bongiorno, "Defendants") are charged in a seventeen-count second superseding indictment, which was filed on November 17, 2010 (the "Indictment," docket entry no. 36), with conspiring to commit securities fraud, to falsify records of a broker-dealer, to falsify records of an investment adviser, and to make a false filing with the SEC, and with securities fraud, falsifying records of a broker-dealer, falsifying records of an investment adviser, making a false filing with the SEC, and certain additional crimes. The charges are based on Defendants' alleged activities as employees of Bernard L. Madoff Investment Securities LLC ("BLMIS").

Bonventre has moved to dismiss the Indictment on the basis of the Government's alleged improper restraint of assets that Bonventre contends are needed to fund his defense, and Bongiorno and Crupi have joined in that motion. Bongiorno has also moved for a hearing to determine whether any assets subject to restraint, including by means other than those challenged in Bonventre's motion, may be released in order to be used to fund her defense. The Court has reviewed thoroughly and considered carefully the parties' submissions and, for the following reasons, denies the motions in their entirety.

## BACKGROUND

Defendants are former employees of BLMIS who are charged with participating in the Ponzi scheme uncovered at about the time of Bernard L. Madoff's December 11, 2008, arrest. Defendants have been subjects of the Government's investigation of the Madoff scheme since shortly after Madoff's arrest. (See Decl. of Andrew Frisch ("Frisch Decl.") ¶ 8; Decl. of Eric R. Breslin ("Breslin Decl.") ¶¶ 6-7; Decl. of Roland G. Riopelle ("Riopelle Decl.") ¶ 2.) Bonventre

and Crupi retained their current counsel in or about March 2009 (Frisch Decl. ¶ 8) and December 2008 (Breslin Decl. ¶ 6), while Bongiorno, who was represented by other counsel in connection with the investigation early on, retained her current counsel on or about September 1, 2009 (Riopelle Decl. ¶ 2).

Bonventre was arrested on a complaint on February 25, 2010, and was first indicted on March 18, 2010. (See Frisch Decl. ¶¶ 12, 14; docket entries for Feb. 25 and Mar. 18, 2010.) On June 22, 2010, the Government filed two civil actions seeking forfeiture of certain assets held by Crupi and Bongiorno, respectively, on the ground that those assets are traceable to the Madoff Ponzi scheme. (See United States of America v. All Right, Title and Interest in the Real Property and Appurtenances known as 1081 Barnegat Lane, Mantoloking, New Jersey, 08738 et al., No. 10 Civ. 4857 (RWS); United States of America v. $304,041.01 on Deposit at Citibank, N.A. et al., No. 10 Civ. 4858 (BSJ).) Bongiorno and Crupi were arrested in or about November 2010 and are charged in the Indictment. In the Indictment, the Government alleges that each of the Defendants is required to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, "all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the . . . [charged conspiracy and securities fraud offenses], including, but not limited to, a sum of money equal to at least $154.5 billion." (Indictment ¶ 199.) The Indictment specifically identifies certain real and personal property of Mr. Bonventre and another co-defendant as forfeitable, and also gives notice that, in the event the property described in the forfeiture allegations has, inter alia, been transferred or placed beyond the jurisdiction of the Court as a result of any act or omission of the Defendants, "it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek

forfeiture of any other property of the defendants up to the value of the forfeitable property described above." (Indictment ¶¶ 199-200.)

On or about December 21, 2010, the Government sent letters to counsel for each of the Defendants (the "December 2010 Letters") noting the $154.5 billion forfeiture allegation in the Indictment and financial transfers made by Defendants to their attorneys. (See Decl. of Barbara A. Ward ("Ward Decl.") Exs. F-I.) The letters "request[]" that the Defendants' attorneys "in essence, 'freeze' any funds sent to [them] by [the Defendants and/or their spouses] . . . and further ask that [counsel] refrain from drawing down against any more of the funds as payment to [their] firm[s]." (Ward Decl. Exs. F, H-I.)[2] The letters warn that counsel's "failure to honor these requests will result in the Government exercising its remedies under the forfeiture laws, including, but not limited to, seeking recourse from the courts and holding [counsel] and [their] firm[s] individually liable for any forfeitable assets received." (Ward Decl. Exs. F-I.)

Defense counsel contend that the Government is using the threat or prospect of forfeiture of funds intended to be used for attorneys' fees as a coercive technique in connection with its efforts to persuade Defendants to cooperate, and that the December 2010 Letters were the first indication they received that the Government considers the Defendants' attorneys' fees to be forfeitable, while the Government contends that it advised at least Bongiorno's and Bonventre's counsel early on that it views any funds that they had paid or would pay to their attorneys as forfeitable assets. After the filing of Bonventre's motion, the Government seized certain assets in his possession, but not the funds in his attorney's escrow account. Subsequently,

---

[2] The letter sent to Bongiorno's counsel contains slightly different language but is the same in substance. (See Ward Decl. Ex. G.)

the Government amended its complaint in the civil forfeiture action that is pending before Judge Jones (No. 10 Civ. 4858) to include claims against Bonventre's assets, including funds held in his attorney's escrow account.

## DISCUSSION

Defendants assert that the December 2010 Letters constitute belated and ineffectual Government efforts to restrain assets necessary for funding the defense of the charges against them. Defendants further contend that the Government's invocation of the prospect of forfeiture in connection with efforts to persuade Defendants to cooperate, and the practical effect of forfeiture measures directed to assets used or intended to be used to pay their attorneys, constitute violations of Defendants' rights to counsel and to due process under the Sixth and Fifth Amendments to the Constitution. Defendants have requested an evidentiary hearing as to the Government's alleged misconduct in raising the potential forfeiture issue; Defendant Bongiorno has further requested a hearing pursuant to United States v. Monsanto, 924 F.2d 1186 (2d Cir. 1991), in the event the Court denies the motion to dismiss the Indictment. According to Defendants, the Indictment must be dismissed unless the Government retreats from its assertion that assets used to fund defense costs are forfeitable. The Government has not withdrawn the December 2010 Letters or abandoned its assertion that funds paid by Defendants or their family members to counsel are subject to forfeiture in the event Defendants are convicted in this case.

### Fifth and Sixth Amendment Claims

"The extreme sanction of dismissal of an indictment is justified in order to achieve one or both of two objectives: first, to eliminate prejudice to a defendant in a criminal prosecution; second, to help to translate the assurances of the United States Attorneys into

consistent performances by their assistants." United States v. Fields, 592 F.2d 638, 647 (2d Cir. 1978) (internal quotation marks and citations omitted). "A district court does not have the power to dismiss an indictment that is legally sufficient simply because it deems the dismissal to be in the interests of justice." United States v. Artuso, 618 F.2d 192, 196 (2d Cir. 1980) (citation omitted). "'Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.'" United States v. Stein, 541 F.3d 130, 134 (2d Cir. 2008) (quoting United States v. Morrison, 449 U.S. 361, 364 (1981)). Where there is a constitutional violation, relief must be tailored to the circumstances in order to safeguard the defendant's rights to counsel and a fair trial, and dismissal "is appropriate only where necessary to 'restore the defendant to the circumstances that would have existed had there been no constitutional error.'" Id. (quoting United States v. Carmichael, 216 F.3d 224, 227 (2d Cir. 2000)). Here, dismissal of the Indictment is unwarranted because Defendants have failed to demonstrate that the Government's conduct has violated their constitutional rights.

Defendants argue that the Government's December 2010 Letters effectively defund their defense, discourage defense counsel from continuing their representations of Defendants, and discourage potential replacement counsel from undertaking such representations, and thus infringe Defendants' Sixth and Fifth Amendment rights to assistance of counsel and due process, respectively. Defendants rely principally on a trio of decisions relating to the prosecutions of a number of former partners and employees of KPMG, LLC ("KPMG"). See United States v. Stein, 435 F. Supp. 2d 330 (S.D.N.Y. 2006) ("Stein I"); United States v. Stein, 495 F. Supp. 2d 390 (S.D.N.Y. 2007) ("Stein IV"); and United States v. Stein, 541 F.3d

130 (2d Cir. 2008) ("Stein V").[3]

Sixth Amendment

In connection with the prosecutions at issue in the Stein trilogy, the Government pressured KPMG to cease paying attorneys' fees and expenses on behalf of defendants who refused to cooperate with the Government. The withholding of those funds, on which the Government had no claim, impaired those defendants' representation by their chosen counsel.[4] Stein V, 541 F.3d at 137-140. Because the Sixth Amendment "protects against unjustified governmental interference with the right to defend oneself using whatever assets one has or might reasonably and lawfully obtain," id. at 156, including "financial donations by others, such as family members and neighbors – and employers," id., the Stein defendants were found to have had a proprietary interest, for Sixth Amendment purposes, in the legal fees that they "reasonably expected to receive . . . from KPMG," id. at 151. The limitation imposed on the defendants' ability to receive full, unfettered legal representation as a result of the Government's pressure on KPMG deprived the defendants of their Sixth Amendment "'right to choose the lawyer or lawyers he or she desires' . . . and 'to use one's own funds [– including donated funds –] to mount the defense that one wishes to present.'" Id. at 151 (quoting Stein I, 435 F. Supp. 2d at 366).

---

[3] Two other decisions in that series are not discussed herein. See United States v. Stein, 440 F. Supp. 2d 315 (S.D.N.Y. 2006) ("Stein II") and United States v. Stein, 452 F. Supp. 2d 230 (S.D.N.Y. 2006) ("Stein III").

[4] The district court and the Second Circuit presumed impairment of legal representation "because 'virtually everything the defendants do in this case may be influenced by the extent of the resources available to them.'" Stein V, 541 F.3d at 151 (quoting Stein I, 435 F. Supp. 2d at 371-72). Defendants here argue a similar relationship between financial resources and potential defense strategy.

To the extent Defendants claim that the Sixth Amendment gives them an absolute right to use for their defense, and counsel the right to retain, funds that are allegedly traceable to criminal activity and thus subject to forfeiture proceedings, their reliance on Stein is misplaced. While a defendant has a property interest in funds consensually given to him by their rightful owner, he has no such interest in "money, though in his possession, [that] is not rightfully his; the Government does not violate the Sixth Amendment if it seizes [ill-gotten] proceeds and refuses to permit the defendant to use them to pay for his defense." Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 626 (1989); see also United States v. Monsanto, 491 U.S. 600, 606, 615 (1989) (holding that "all assets falling within [the] scope [of the criminal forfeiture statute] are to be forfeited upon conviction, with no exception existing for the assets used to pay attorney's fees" and that "assets in a defendant's possession may be restrained . . . based on a finding of probable cause to believe that the assets are forfeitable"). It is thus "easy to distinguish the case of an employee who reasonably expects to receive attorneys' fees as a benefit or perquisite of employment" from that of a defendant who has paid, or wishes to pay, his attorneys' fees with money that is not rightfully his. Stein V, 541 F.3d at 155 ("Although 'there is no Sixth Amendment right for a defendant to obtain counsel using tainted funds, a defendant still possesses a qualified Sixth Amendment right to use wholly legitimate funds to hire the attorney of his choice.'" (quoting United States v. Farmer, 274 F.3d 800, 804 (4th Cir. 2001) (alteration and emphasis omitted))).

In the instant case, unlike in Stein, the Government alleges that the funds used or sought to be used to pay Defendants' attorneys constitute or are derived from proceeds traceable to the commission of the offenses charged. (See Indictment ¶ 199; Ward Decl. Exs. F-I.) Even if

the Government were held to have interfered with Defendants' ability to use these funds, including to pay counsel, the Sixth Amendment would not be implicated because "the Sixth Amendment does not prevent the government from reclaiming its property from a defendant even though the defendant had planned to fund his legal defense with it," or from an attorney who has already received such property as payment. Stein V, 541 F.3d at 155 (discussing Caplin & Drysdale); 21 U.S.C.A. § 853(c) (West 1999).

Indeed, 28 U.S.C. § 2461(c) requires the Court to order the post-conviction forfeiture of any property as to which the Government has included a forfeiture allegation in the Indictment in accordance with the procedures set forth in 21 U.S.C. § 853 ("Section 853"). Section 853(c) vests all right, title, and interest in such property "in the United States upon the commission of the act giving rise to forfeiture" and subjects to forfeiture "[a]ny such property that is subsequently transferred to a person other than the defendant," subject to certain transferee defenses. 21 U.S.C.A. § 853(c) (West 1999 & Supp. 2010); 28 U.S.C.A. § 2461(c) (West 2006). As the Supreme Court noted in Caplin & Drysdale, the forfeiture statute makes no exceptions for funds designated for use in connection with defense of the charges; nothing in the statute suggests an exception for transfers made in aid of such defense, and the policy considerations that informed the Supreme Court's holding in Caplin & Drysdale that deprivation of the ability to use ill-gotten gains to fund a defense is not a Sixth Amendment violation apply equally to the transfer context. Nor are Defendants' claims of lack of notice of the Government's position sufficient on this record to frame a Sixth Amendment violation or a violation of the statute and rules regarding forfeiture that would preclude any Government attempt to invoke forfeiture remedies with respect to the transferred funds. The Indictment alleges that Defendants are

required to forfeit more than $154 billion should they be convicted, an amount that would appear to exceed by many orders of magnitude the Defendants' respective individual and family assets. No further specificity is required by the statute; Rule 32.2 of the Federal Rules of Criminal Procedure requires only that the Indictment include a statement of the Government's intent to seek forfeiture. In that the statute vests title in the Government upon conviction as of the date of the crime and counsel are presumed to be aware of the content of the relevant law, rules and Supreme Court precedents, there is nothing in the Government's actions as alleged that would be so contrary to settled notions of rights to use property in aid of a defense as to warrant preclusion of further prosecution. Of course, nothing precludes Defendants or their counsel from contesting the traceability of particular assets or asserting any statutory or other available defense to an attempt to effect the forfeiture of assets in counsel's possession.

Fifth Amendment

In Stein I, the district court held, as an alternative to its Sixth Amendment determination, see Stein IV, 495 F. Supp. 2d at 409 n.80, that the Government's interference with the defendants' ability to receive attorneys' fees from KPMG also violated the defendants' substantive due process right to a fair trial. Stein I, 435 F. Supp. 2d at 356-65.[5] "The underlying theme is that the government may not both prosecute a defendant and then seek to influence the

---

[5] The Supreme Court has expressed doubt that a due process claim "adds anything to [a] Sixth Amendment claim, because, while the Constitution guarantees a fair trial through the Due Process Clauses . . . it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment." Caplin & Drysdale, 491 U.S. at 633. Judge Kaplan similarly noted the ambiguity as to the delineation between the Fifth Amendment's protection of a criminal defendant's right to a fair trial and the "more specific provisions of the Bill of Rights," Stein I, 435 F. Supp. 2d at 357. The Second Circuit declined to address the Fifth Amendment aspect of the Stein I and Stein IV decisions because it affirmed the district court's Sixth Amendment holding. Stein V, 541 F.3d at 136.

manner in which he or she defends the case" and thus "fairness in criminal proceedings requires that the defendant be firmly in the driver's seat, and that the prosecution not be a backseat driver." Id. at 357-58. The "backseat driv[ing]" that the Stein Court found improper was the Government's coercion of a third party, KPMG, to withhold funds that would otherwise have been lawfully available to the defendants. Id. at 361-62. Defendants argue that, by issuing the December 2010 Letters, the Government impermissibly interfered with Defendants ability to mount a defense. As with Defendants' Sixth Amendment argument, the alleged forfeitability of the funds at issue distinguishes materially the instant case from Stein. Government interference with funds that constitute or are derived from proceeds traceable to the relevant crimes is not categorically prohibited by the due process clause of the Fifth Amendment, and is even expressly provided for, within certain parameters, by statute. Because they relate to assets that allegedly are not lawfully available to Defendants and as to which the Government has, on the current record, the right to pursue measures under the applicable forfeiture statutes, the Government's December 2010 Letters do not so inappropriately influence the manner in which Defendants may defend this case as to violate Defendants' due process right to a fair trial.

While the Government's conduct may have made it less than perfectly clear that it intended to seek forfeiture of property in Defendants' possession, the Indictment's forfeiture allegation identifies "all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the said offenses, including, but not limited to, a sum of money equal to at least $154.5 billion" as well as title to three specifically identified residences and one automobile. (Indictment ¶ 199.) The Indictment further states that the Government will seek substitute assets, if necessary. (Id.) Defendants were therefore apprised that, should they be

convicted, the Government would seek forfeiture of a sum considerably greater than the value of their combined assets, and that nothing in the forfeiture allegation limited the sources of assets that the Government would pursue. Cf. United States v. Kalish, 626 F.3d 165, 169 (2d Cir. 2010) (holding that similar language "effectively provided notice that a money judgment would be sought"). The Government's forfeiture notification activities therefore are not so fundamentally unfair as to violate Defendants' Fifth Amendment rights and the extreme sanction of dismissal of the indictment is not warranted. Furthermore, no evidentiary hearing concerning Defendants' allegations regarding the Government's motives in sending the December 2010 Letters is necessary because, as explained, those allegations, even if taken as true, are insufficient to establish a constitutional violation.

Whether the December 2010 Letters Effected an Improper Pretrial Restraint

Defendants argue that the December 2010 Letters constitute constructive pretrial restraints of assets in Defendants' possession pursuant to 21 U.S.C. § 853(e)(1) and that the Government's failure to act to effect such restraint immediately upon the filing of the indictment invalidates the December 2010 Letters and constitutes an independent violation of Defendants' Sixth and Fifth Amendment rights. Section 853(e)(1) authorizes the Court to enter a restraining order or injunction "[u]pon application of the United States" and, in relevant part, "upon the filing of an indictment or information charging [certain crimes] for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section." 21 U.S.C.A. § 853(e)(1) (West 1999). Defendants contend that the statute requires any pretrial restraint applications to be made contemporaneously with the filing of the Indictment and that the

December 2010 Letters constitute invalid pretrial restraints because the Government did not issue them until long after it had charged the Defendants. Defendants' characterization of the December 2010 Letters as Section 853(e) restraints is inconsistent with their content. The Letters assert that the transferred assets are forfeitable, request that counsel "freeze" the unexpended funds and threaten further legal measures if the requests go unheeded, but they are neither applications to nor actions taken by the Court pursuant to the statute. Defendants' arguments regarding the permissible timing of action pursuant to Section 853(e) therefore are inapposite and need not be addressed at this juncture.

Monsanto Hearing

Bongiorno requests that, if the indictment is not dismissed, the Court hold a hearing pursuant to United States v. Monsanto, 924 F.2d 1186 (2d Cir. 1991), to determine (1) whether the funds "restrained" by the Government as a result of the December 2010 Letters are forfeitable, and (2) whether those funds are necessary in order for Bongiorno to retain her attorneys of choice. In light of the Court's determination that the December 2010 Letters do not constitute restraints of Defendants' assets, the Court denies this request without prejudice to the institution of such a motion in the current civil forfeiture proceeding. See, e.g., Commodity Futures Trading Com'n v. Walsh, Nos. Nos. 09 Civ. 1749 (GBD), 09 Civ. 1750 (GBD), 09 Cr. 722 (MGC), 2010 WL 882875 (S.D.N.Y. Mar. 9, 2010); S.E.C. v. Coates, No. 94 Civ. 5361 (KMW), 1994 WL 455558 at *3 (S.D.N.Y. Aug. 23, 1994).

CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the Indictment or for any other relief with respect to the alleged restraint of their assets by reason of the Government's December 2010 Letters are denied. Defendant Bongiorno's motion for a <u>Monsanto</u> hearing is also denied, as is Defendant Bonventre's motion to supplement the record in this proceeding with copies of his filings in connection with a motion to dismiss the related civil action seeking forfeiture of his assets. The disposition of these motions is without prejudice to <u>Monsanto</u> proceedings, and without prejudice to any party's position as to the permissibility or effect of any actual pretrial restraints or applications therefor, or as to traceability or ultimate forfeitability of any asset. This Opinion and Order resolves docket entry nos. 67, 88, 90, 103, and 112.[6]

SO ORDERED.

Dated: New York, New York
April 5, 2011

_____
LAURA TAYLOR SWAIN
United States District Judge

---

[6] The Court also directs the Clerk of Court to terminate docket entry nos. 20, 25, 42, 50, and 66.