UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

      - against -                    S10 10 CR 228 (LTS)

DANIEL BONVENTRE,

      Defendant.

REPLY MEMORANDUM OF LAW IN SUPPORT OF DANIEL BONVENTRE'S
MOTIONS FOR IN LIMINE RELIEF, SEVERANCE AND CERTAIN DISCLOSURES

Andrew J. Frisch
Jeremy B. Sporn
Amanda L. Bassen
The Law Offices of Andrew J. Frisch
40 Fulton Street, 23rd Floor
New York, New York 10038
(212) 285-8000
(646) 304-0352 (facsimile)
afrisch@andrewfrisch.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────

UNITED STATES OF AMERICA

      - against -                            S10 10 CR 228 (LTS)

DANIEL BONVENTRE,

           Defendant.
───────────────────────────────

REPLY MEMORANDUM OF LAW IN SUPPORT OF DANIEL BONVENTRE'S
MOTIONS FOR IN LIMINE RELIEF, SEVERANCE AND CERTAIN DISCLOSURES

      This memorandum of law is submitted on behalf of Daniel Bonventre in further support of motions in limine, filed on August 30, 2013, and in reply to the government's papers in response, filed on or about September 12, 2013.

A. Because the Expert Notice for Dara Schneider Does Not Satisfy
   Rule 16(a)(1)(G), Her Testimony Should be Precluded

      In response to the defendants' motion to preclude testimony from government experts because of the government's failure to provide expert opinions and the bases therefor as required by Rule 16 (a)(1)(G), the government, on September 12, 2013, provided supplemental disclosures for its tax expert. Based on that disclosure, Mr. Bonventre has agreed to withdraw his motion to preclude the government's tax expert, and the government has agreed to permit Mr. Bonventre to provide reciprocal notice for his expert thirty days from September 12, 2013, if the Court approves.[1]

───────────

[1] We have advised the government that our tax experts are continuing to review these submissions, and that our withdrawal of the motion to preclude is without prejudice to revisit the

2

Mr. Bonventre also withdraws his motion to preclude the testimony of Michael Auerbach, the government's ERISA expert. We have advised the government that we intend to provide notice for our ERISA expert that tracks the language of the government's notice, and have invited the government to provide greater specificity about Mr. Auerbach's testimony if the government wishes to learn more on the substance of the intended testimony by Mr. Bonventre's ERISA expert.

Mr. Bonventre, however, presses his motion to preclude the expert testimony of Dara Schneider because of the government's failure to provide adequate notice of her expert opinion. While the government supplemented its disclosures regarding its tax expert, it has to date not supplemented its disclosure about Ms. Schneider.

The government's notice for Ms. Schneider says that she will testify about "certain instances in which Madoff Securities' books and records diverged from GAAP accounting," and "the proper accounting treatment of customer assets . . ., firm assets, income, liabilities and other items." That notice does not identify Ms. Schneider's opinions, the bases therefor nor the particular "instances" or treatment of assets, income, liabilities and other items which will be the subject of her expert testimony.

Elsewhere in the government's response, the government claims that regarding Mr. Bonventre's request for a bill of particulars, "he has now gotten most if not all of what he asked for." Gov't Br. at 15. To the contrary, the government's failure to identify or limit itself to particular entries in specific documents (underlying the false filing and other counts) is

---

issue if the disclosures prove to be inadequate.

exacerbated by its refusal to even provide the opinions of its expert about those documents, identify the documents about which she will testify or the bases for her opinions. The government's violation of Rule 16 is disabling Mr. Bonventre's experts from preparing for trial and causing him irreparable prejudice. The government has left the Court no choice but to preclude Ms. Schneider's testimony.

Mr. Bonventre consented to the government's request for more time to respond to this part of his motion, but the government has done nothing to remedy the inadequacy of its notice for Ms. Schneider. Mr. Bonventre reserves the right to reply when the government responds to his motion to preclude Ms. Schneider's testimony and/or if and when it supplements its notice about her opinions.

B. The Court Should Preclude Evidence of Alleged Tax Misconduct that is Time-Barred

On September 12, 2013, the government provided supplemental notice in support of its expert on tax issues related to Mr. Bonventre. The notice includes summary charts and supporting spreadsheets identifying benefits from Mr. Bonventre's employ at BLMIS, which the government alleges he received but did not declare as taxable income. In at least two ways, these new government disclosures dramatically demonstrate why the government should not be permitted to rely on alleged historical tax misconduct outside the statute of limitations.

One of the government's summary charts, GX 2000-25, alleged that nearly *two-thirds* of the total alleged taxes unpaid by Mr. Bonventre falls outside of the six-year statute of limitations. Of that amount, some types of purportedly unreported income completely ended outside the statute of limitations. For example, Government Exhibits 2000-42 and 2000-43

allege that Mr. Bonventre received $197,016.95 in benefits toward tuition for his son's school, but all of those benefits were earned between 1992 and 2002; none of those alleged benefits were received within the statute of limitations.

Similarly, Government Exhibits 2000-44 and 2000-45 allege that Mr. Bonventre received $117,582.21 in benefits toward a mortgage, but all of those benefits occurred between 1993 and 1999, none of which falls within the statute of limitations.  Further, Government Exhibits 2000-46 and 2000-47 allege receipt of benefits for condominium fees, but all of those benefits occurred between 1992 and 1999, none within the statute of limitations.

These benefits, and others alleged by the government, have no relationship to the subject of the four tax counts with which Mr. Bonventre is charged.  The government seeks to elicit them on for the illegitimate and improper purpose of showing Mr. Bonventre's alleged propensity to commit tax crimes.  The government's allegations of undeclared benefits received outside the statue of limitations are paradigmatic examples of government overreaching to smear a defendant with unduly prejudicial allegations that have no or only ephemeral probative value to the crimes charged.  "A danger generally associated with other-acts evidence is that the jury will understand it to suggest that the defendant is predisposed to engage in a particular type of criminal activity." *United States v. Shellef*, 507 F.3d 82, 101 (2d Cir. 2007) (citing Fed. R. Evid. 404(b) (stating that other-acts evidence "is not admissible to prove the character of a person in order to show action in conformity therewith.")); *see also United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009) (finding evidence admitted at trial to be "propensity evidence in sheep's clothing").

Further, the government's attempt to introduce this evidence is improper for an

equally obvious reason. Some of the government's charts allege receipt of cash and payment of Mr. Bonventre's credit card invoices for years so far in the past that he cannot possibly defend himself – precisely the reason why the law imposes temporal limitations on the government's authority to charge. For example, Government Exhibits 2000-40 and 2000-41 include payments made to Mr. Bonventre for American Express invoices for the years 1992 through 2008. Of the 167 purported payments made in satisfaction of these invoices, over half of those payments occurred outside of the statute of limitations. In addition, of the total $942,150.75 in alleged payments, over forty percent of that amount was paid outside of the statute of limitations. Moreover, Mr. Bonventre has only been provided with American Express records dating back to 2005. Without access to the appropriate records, he is unable to defend the charges brought against him.

It is indisputable that the statute of limitations precludes bringing substantive charges of false tax filings for the years prior to 2003. As the Supreme Court has noted, the purpose of the statute of limitations is to "protect against the prosecution's bringing stale criminal charges against [a] defendant . . . ." *United States v. Gouveia*, 467 U.S. 180, 192 (1984). Moreover, "[t]he passage of time by itself . . . may dangerously reduce [the accused's] capacity to counter the prosecution's charges. Witnesses and physical evidence may be lost; the defendant may be unable to obtain witnesses and physical evidence yet available. His own memory and the memory of his witnesses may fade." *United States v. Blaustein*, 325 F. Supp. 233, 238 (S.D.N.Y. 1971) (quoting *Dickey v. Florida*, 398 U.S. 30, 42 (1970) (Brennan, J. concurring)). Accordingly, all evidence of alleged tax misconduct outside the statute of limitations must be precluded.

C.  The Court Should Accept the Government's Invitation to Review
    <u>In Camera its Letters to Judge Sullivan about Frank DiPascali</u>

In response to Mr. Bonventre's motion for disclosure of the government's letters to Judge Sullivan about Frank DiPascali's cooperation, the government invites the Court to review those letters in camera. We respectfully request that the Court accept that invitation and conduct an in camera review of the letters.

D.  Mr. Bonventre's Request for the SEC's and Trustee's Reports and
    <u>Notes of Statements by Defendants and Government Witnesses</u>

Mr. Bonventre has asked for the production of SEC and Trustee reports and notes of statements made to them by any of the defendants and government witnesses. Counsel has been in touch with the Trustee to determine if the issue can be resolved without judicial intervention, and discussions are currently underway. Counsel has also been in touch with the government and the SEC, but has not received word of their final position on this issue. If these issues cannot be resolved, counsel will write the Court and seek judicial resolution.

E.  <u>The Government's Use of GX 206-7 to Prove the Tax Charges Should be Precluded</u>

While the parties have resolved some issues regarding government exhibits, one remains unresolved. While Mr. Bonventre acknowledges the relevance for some purposes of GX 206-7, a nearly 500,000 page exhibit comprising bank statements and checks relating to a Chase Bank account, he presses his motion to preclude use of the exhibit to prove the tax counts. Mr. Bonventre does not object to the exhibit because it is too large, as the government professes to understand his objection, but because it apparently contains checks relied on by the government's

tax expert as part of the government's proof of its tax charges. Unless the government provides copies of the specific checks and spares Mr. Bonventre the task of reviewing nearly half a million pages to find the needles in the haystack, it should be precluded from using the exhibit to press its tax charges.

While the government has provided summary charts and spreadsheets identifying components of its tax analysis, those charts and spreadsheets have proven inadequate to enable counsel to find the underlying checks on which they are based. The government has had ample time both prior to and since giving its expert notice to provide copies of the specific checks at issue without requiring counsel to undertake the multi-person, multi-day exercise of locating the relevant checks in their nearly 500,000 page exhibit. Indeed, the government's summary charts and spreadsheets establish that the government has already located the checks, but apparently has elected not to preserve a set for the defense. The government has the burden of proof and the resources to find and produce these checks, and the exhibit should be precluded as it pertains to the tax counts if the government does not provide them.

F.  <u>Mr. Bonventre Joins in the Replies of Co-Defendants to the Extent Applicable to Him</u>

On other issues briefed in the defendants' initial submissions, Mr. Bonventre joins in the replies of co-defendants to the extent applicable to him.

September 19, 2013

Respectfully submitted,

___s_____
Andrew J. Frisch
Jeremy B. Sporn
Amanda L. Bassen
The Law Offices of Andrew J. Frisch
40 Fulton Street
New York, New York 10038

*Counsel for Daniel Bonventre*
