THE LAW OFFICES OF
ANDREW J. FRISCH, PLLC

ONE PENN PLAZA
53rd FLOOR
NEW YORK, NEW YORK 10119
(212) 285-8000
FAX: (646) 304-0352

**MEMO ENDORSED**

March 30, 2020

By ECF
The Honorable Laura Taylor Swain
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *United States v. Daniel Bonventre*
Criminal Docket No. 10-228 (LTS)

Dear Judge Swain:

Before the current pandemic began risking the lives of vulnerable prisoners, my client Daniel Bonventre and I were in regular contact about the timing of the application I make by this letter. In November 2019, I submitted a letter to the Bureau of Prisons ("BOP"), invoking the protocol of 18 U.S.C. §3582(c)(1)(A), arguing that correct recalculation of Mr. Bonventre's sentence under the First Step Act would create the extraordinary and compelling circumstance of Mr. Bonventre's continued detention beyond the date when he should be released to home confinement. For over four months, BOP has not responded to my letter. A copy of my letter and evidence of its receipt by BOP more than thirty days ago is appended as Exhibit A.

Meanwhile, Mr. Bonventre, now 73 years-old and taking medication for hypertension, satisfies *all* of the criteria of the Attorney General's Memorandum of March 26, 2020, recommending immediate release of inmates to home confinement in response to the pandemic. Apart from the pandemic itself, an extraordinary and compelling factor favoring Mr. Bonventre's immediate release is the precarious medical condition of Mr. Bonventre's 66 year-old wife Barbara, described herein (*see* Exhibit B). The questions posed by this application appear to be how expeditiously Mr. Bonventre will be released, not whether he will be released in advance of his projected release date, and whether he should be released without home confinement because he poses no risk of recidivism and so he can adequately care for his ailing wife.

Section 3582(c)(1)(A) authorizes the Court to order a defendant released (with or without home confinement) for extraordinary and compelling reasons when BOP does not respond within thirty days to an inmate's application. While my letter to BOP in November 2019 could not have anticipated the pandemic as an extraordinary and compelling reason to release

Mr. Bonventre, it is neither feasible nor necessary to restart the administrative clock with another application to BOP expressly raising that ground given BOP's existing delay in responding to Mr. Bonventre's pending application, the Attorney General's effective acknowledgment that the pandemic constitutes an extraordinary and compelling circumstance, and the intervening risk of serious illness and death.

Since my submission to BOP, developments in Congress and continuing discussion in legal circles about the First Step Act have helped clarify Mr. Bonventre's status, even apart from the pandemic and the Attorney General's memorandum. As explained herein, Mr. Bonventre is eligible for home confinement no later than on or about May 5, 2020. For the reasons stated herein, this Court should exercise its discretion and order Mr. Bonventre immediately released under supervision, but without home confinement or, alternatively, immediately released to home confinement.

On or about March 5, 2015, Mr. Bonventre began serving a sentence of 120 months imposed by the Court in December 2014. In imposing sentence, the Court expressly recommended that Mr. Bonventre serve the final year of his sentence on home confinement. Pursuant to BOP's Elderly and Family Reunification for Certain Nonviolent Offenders Program, authorized as part of the Second Chance Act and modified as part of the First Step Act, Mr. Bonventre is eligible for release to home confinement upon serving "⅔ of the term of imprisonment to which the offender was sentenced." *See* 34 U.S.C. §60541(g)(5)(A)(ii). On December 3, 2019, the House of Representatives passed H.R. 4018 "to provide that the amount of time that an elderly offender must serve before being eligible for placement in home detention is to be reduced by the amount of good time credits earned by the prisoner." *See https://www.congress.gov/congressional-report/116th-congress/house-report/311/1?overview=closed* at "SECTION 1. Good Conduct Time Credits for Certain Elderly Nonviolent Offenders," Nov. 26, 2019 ("House Report"), fifth paragraph. The House Report explains that H.R. 4018 was necessitated by "a drafting error in the Second Chance Act." House Report at fourth paragraph.

Here, Mr. Bonventre is eligible for home confinement after serving "⅔ of the term of imprisonment to which the offender was sentenced" [*see* 34 U.S.C. §60541(g)(5)(A)(ii)], a point in time which incorporates his good time credit. House Report at fifth paragraph; 18 U.S.C. §3624(b)(1). Thus, Mr. Bonventre should be afforded a reduction of one-third of the term to which he was sentenced (40 months) plus "credit toward the service of the prisoner's sentence of up to 54 days for each year of the prisoner's sentence imposed by the court" (18 months) [*see* 18 U.S.C. §3624(b)(1)], resulting in a term of about 62 months (120 minus 40 months minus about 18 months) before he is eligible for home confinement. That date is no later than May 2020.

Meanwhile, the law permits an inmate's sentence to be reduced or otherwise adjusted where extraordinary and compelling reasons warrant such a reduction. 18 U.S.C. §3582(c)(1)(A). The law neither defines nor places limits on what may constitute extraordinary and compelling reasons in a particular case, though at least one court has relied on the common

meaning of the words. *United States v. Cantu*, 2019 U.S. Dist. LEXIS 100923 (S.D. Tex. June 17, 2019) ("extraordinary" means "[b]eyond what is usual, customary, regular or common," and a "compelling need" is one "so great that irreparable harm or injustice would result if [the result] is not [granted]"). *See, e.g., United States v. Young*, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) (collecting cases) ("the district courts themselves have the power to determine what constitute extraordinary and compelling reasons for compassionate release").

Here, the pandemic and Mr. Bonventre's eligibility for imminent release constitute extraordinary and compelling reasons warranting Mr. Bonventre's release to supervised release or, alternatively, to supervised release with the condition of home confinement. Mr. Bonventre's vulnerability to the pandemic as a 73 year-old man with hypertension (*see* Exhibit B at ¶2) constitutes an extraordinary and compelling reason to release him. Barbara's precarious health is a separate extraordinary and compelling reason. As Barbara explains in her accompanying Declaration, she has a history of Marfan's disease with aortic valve disease and two attendant valve replacements and repair. Any infection is life-threatening and dire. She suffers from osteoporosis that resulted in a spontaneous femoral fracture in 2017, which did not heal well and left her significantly incapacitated. She had a total hip replacement in November 2018 and is at significant risk for another spontaneous femoral fracture. Exhibit B at ¶3.

Barbara requires significant assistance with routine daily chores. While Barbara's sister helped her with shopping and medical appointments until recently, her sister's daughter has been diagnosed with pancreatic cancer. Barbara's sister is now preoccupied with her daughter and her daughter's two pre-teenaged children and is no longer available to help. Exhibit B at ¶4. Barbara is by herself and goes herself to medical appointments, to the pharmacy for heart medications, and to the store for food and supplies. She is at risk even without the current pandemic whenever she leaves her apartment. She needs someone to help her with her errands, medical appointments and with basic living. Her situation is desperate. Exhibit B at ¶¶4-6. For these reasons, Mr. Bonventre should be released without home confinement because he poses no risk of recidivism, but also so that he has the ability to accommodate Barbara's needs.

Mr. Bonventre qualifies for release to home confinement under the Attorney General's memorandum issued last week. The following list tracks the criteria identified in the Attorney General's memorandum of March 26, 2020, and shows that Mr. Bonventre satisfies all of them:

- Mr. Bonventre's age (73 years-old) and medical condition make him vulnerable to COVID-19 under the Centers for Disease Control and Prevention guidelines. As confirmed by Mr. Bonventre's wife (Exhibit B at ¶2), he had a stroke in his right eye in 2006 or 2007, was diagnosed with hypertension and was prescribed Propranolol, which he continues to take daily at FCI Schuylkill's satellite camp where he is detained, as well as Atorvastatin (a generic version of lipitor) daily for

3

high cholesterol;[1]

- The satellite camp at FCI Schuylkill where Mr. Bonventre is detained is classified at BOP's lowest security level;

- Mr. Bonventre's conduct at FCI Schuylkill has been exemplary; he has not incurred any BOP violation;

- Mr. Bonventre has the most minimal possible score for risk of recidivism under the BOP's "PATTERN" protocol;

- Upon release, Mr. Bonventre will live with and care for his wife;

- Mr. Bonventre's crime was non-violent, not drug-related, and not a sex offense.

The Court need not and should not wait for Mr. Bonventre to raise every ground for relief to BOP under § 3582(c)(1)(A). The impending public health catastrophe in our prisons poses a real danger to Mr. Bonventre. *See generally Washington v. Barr*, 925 F.3d 109, 120-21 (2d Cir. 2019) ("[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile"). Federal courts have found that they can hear applications prior to the expiration of thirty days (or the exhaustion of administrative remedies) if there is an emergency. *See United States v. Agustin Francisco Huneeus*, No. 19 Cr. 10117 (IT), ECF Docket No. 642 (D. Mass. Mar. 17, 2020) (granting defendant's emergency motion based on COVID-19); *see also United States v. James Arberry*, No. 15 Cr. 594 (JPO), ECF Docket No. 84 (S.D.N.Y. Nov. 12, 2019) (hearing and granting emergency compassionate release application of prisoner with cancer). This practice accords with general administrative law principles and the exception to administrative exhaustion requirements in numerous statutory schemes. *See, e.g., Hendricks v. Zenon*, 993 F.2d 664, 672 (9th Cir. 1993) (waiving requirement to exhaust administrative remedies where "exceptional circumstances of peculiar urgency are shown to exist") (*citing Granberry v. Greer*, 481 U.S. 129 (1987)); *Washington v. Barr*, 925 F.3d 109, 119 (2d Cir. 2019) (finding that administrative exhaustion requirements can be waived if delay would cause irreparable injury); *Maxwell v. New York Univ.*, 407 F. App'x 524, 527 (2d Cir. 2010) (same).

"[A]pplication of the exhaustion doctrine is 'intensely practical'" and should "be guided by the policies underlying the exhaustion requirement." *Bowen v. City of New York*, 476 U.S. 467, 484 (1986) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 n.11 (1976)). Those policies were articulated by the Supreme Court in *Weinberger v. Salfi*, 422 U.S. 749 (1975):

Exhaustion is generally required as a matter of preventing premature interference

---

[1] "Based on current information, it appears elderly people with coronary heart disease or hypertension are more likely to be infected and to develop more severe symptoms [from COVID-19]." See https://www.heart.org/en/about-us/coronavirus-covid-19-resources.

> with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

422 U.S. at 765.

Conducting an "intensely practical" analysis of these policies in the context of the Social Security Act's exhaustion requirement, the Supreme Court held in *Bowen* that courts "should be especially sensitive" to irreparable and severe medical harm resulting for blind adherence to a statutory exhaustion requirement, particularly "where the Government seeks to require claimants to exhaust administrative remedies merely to enable them to receive the procedure they should have been afforded in the first place." 476 U.S. at 484 (discussing 42 U.S.C. § 405(g)); *see also Rafeedie v. I.N.S.*, 880 F.2d 506 (D.C. Cir. 1989) (Ginsburg, J., concurring) ("As I see it, a statutory exhaustion requirement, unless Congress explicitly declares otherwise, does not impose an absolute, unwaivable limitation on judicial review; instead, it sets a condition that may be excused when insistence on exhaustion would threaten grave harm to the party seeking review and would not sensibly serve the purposes Congress envisioned in establishing that condition").

When coupled with the impending crisis, the unique exhaustion provision in Section 3582(c)(1)(A) places this case squarely within *Bowen*'s holding. Under Section 3582(c)(1)(A), exhaustion will "merely [ ] enable [Defendants] to receive the procedure they should have been afforded in the first place" – it will simply advance by what could be a crucial thirty days this Court's consideration of client's motion for compassionate release. *Bowen*, 476 U.S. at 484. To wit, § 3582(c)(1)(A) provides that motions for compassionate release are to be brought *either* by the "Director of the Bureau of Prisons, *or* upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . ." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). In other words, § 3582(c)(1)(A)'s exhaustion requirement is not like other statutory exhaustion requirements, which expressly deprive federal courts of jurisdiction to hear disputes in the absence of exhaustion. *Cf. Booth v. Churner*, 532 U.S. 731, 736 (2001) (failure to exhaust under the Prison Litigation Reform Act, 42 U.S.C. § 1997(e), means action cannot be maintained in federal court because that provision explicitly provides that "*[n]o action shall be brought* with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." (emphasis added)).

Congress's desire to avoid blind adherence to this "exhaustion" requirement is evidenced by the exception baked into Section 3582(c)(1)(A), which provides that Defendants can bypass exhaustion altogether if the warden fails to act on an administrative application for compassionate release within thirty days. 18 U.S.C. § 3582(c)(1)(A) ("[T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has

5

fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility*, whichever is earlier . . . ." (emphasis added)). With this provision, Congress implicitly recognized that the policies underlying compassionate release are not furthered – and, indeed, may be actively frustrated -- by excessive deference to bureaucratic process.

It is only a matter of time before COVID-19 spreads like wildfire in the prisons. As one Court held on March 19th:

> The Court is glad to hear that there are currently no reported cases of COVID-19 at Maguire, but is unsure what that means if people are not being tested. And, as the [prison's] management plan itself acknowledges, symptoms of COVID-19 can begin to appear 2-14 days after exposure, so screening people based on observable symptoms is just a game of catch up. That's why the Bay Area is on lockdown. We don't know who's infected. Accordingly, the government's suggestion that Toledo should wait until there is a confirmed outbreak of COVID-19 in Maguire before seeking release, *see* ECF No. 113 at 6 ("If the situation with respect to COVID-19 at Maguire changes, Toledo is free to seek reconsideration of the issue at that point."), is impractical. By then it may be too late.

*In the Matter of the Extradition of Alejandro Toledo Manrique*, 2020 WL 1307109, at *1, 19-MJ-71055 (MAG) (TSH) (N.D. Cal., Mar. 19, 2020).

While the Attorney General's memorandum of last week provides reason to hope that Mr. Bonventre's release may happen sooner than later, every minute of administrative delay adds to the risk of infection and death, especially as BOP has failed to respond to the letter I wrote more than four months ago. Further, the most that the Attorney General authorizes is release to home confinement, but any such restriction on Mr. Bonventre would be unnecessary given the virtual impossibility of recidivism and his need to come and go from home as necessary to accompany and shop for his wife and otherwise attend to her needs.

In ruling on this application, the Court should consider that Mr. Bonventre and I, on two separate occasions over the past two or so years, met at FCI Schuylkill with attorneys from BakerHostetler representing the Madoff Trustee. Mr. Bonventre answered all of the Baker attorneys' questions and provided his insights on documents which they sought to understand. I believe that the Baker attorneys found Mr. Bonventre's assistance to be entirely truthful and substantial.

For these reasons, I respectfully request that the Court issue an order to BOP that Mr. Bonventre be released without further delay subject to the usual conditions

of supervised release. Alternatively, I respectfully request that the Court issue an order to BOP that Mr. Bonventre be released without further delay to home confinement.

Respectfully submitted,

/s/
Andrew J. Frisch

cc: Office of the United States Attorney

Attachments

    The Government must file its written response to the foregoing application by April 3, 2020, at 5:00 p.m.  Medical or other confidential personal information may be redacted in the version filed on ECF.  The response must include a copy of the Attorney General's March 26, 2020, memorandum that is referred to in the application.  A complete courtesy copy must be provided to defense counsel and emailed to Chambers via SwainNYSDCorresp@nysd.uscourts.gov.  Any reply, which must state whether the defendant, after consultation with counsel, consents to waive his appearance for a telephonic hearing to be conducted by the Court with counsel, must be filed by April 7, 2020, at 3:00 p.m.

    SO ORDERED.
    /s/ Laura Taylor Swain, USDJ 3/30/2020